1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

RANDY DAVISSON,

**Case No. 1:15-cv-00758-EPG**

12

Plaintiff,

**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

13

v.

14

CAROLYN W. COLVIN, Acting Commissioner of Social Security

15

Defendant.

16

17

**I.    INTRODUCTION**

18

Plaintiff Randy Davisson ("Plaintiff") seeks judicial review of a final decision by the

19

Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

20

disability insurance and supplemental security income ("SSI") benefits pursuant to Titles II and

21

XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs,

22

which were submitted without oral argument to the Honorable Erica P. Grosjean, United States

23

Magistrate Judge.[1]

24

**II.    BACKGROUND AND PRIOR PROCEEDINGS**[2]

25

Plaintiff was 43 years old at the time of his hearing before the Social Security

26

Administration.  AR 50.  He graduated from high school, but has no post-secondary education.[3]

27

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 9.)

28

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff testifies that he received special education in high school.

1

AR 50-51.  Plaintiff most recently worked as a custodian in 2010, but was laid off.  AR 52, 248.

Plaintiff lives alone and does not drive because he lacks a vehicle, although he sometimes rides

the bus.  AR 64-65.

Plaintiff's alleged physical conditions are:  scoliosis, a shortened right leg, and a right hip

injury.  AR 247.  He also alleges depression.  AR 53.  On April 19, 2012, Plaintiff filed

applications for SSI under Title XVI and disability insurance benefits under Title II, alleging a

disability beginning on April 18, 2012.  AR 214-223, 224-230.  The applications were denied

initially on September 15, 2012 and on reconsideration on February 21, 2013.  AR 92-117, 148-

149.  Plaintiff filed a request for a hearing on July 3, 2013.  AR 127-129.  The hearing was then

conducted before Administrative Law Judge G. Ross Wheatley (the "ALJ") on October 16, 2013.

AR 46.  On November 1, 2013, the ALJ issued an unfavorable decision determining that Plaintiff

was not disabled.  AR 26-38.  Plaintiff filed an appeal of this decision with the Appeals Council.

The Appeals Council denied the appeal, rendering the ALJ's order the final decision of the

Commissioner.  AR 1-6.

Plaintiff now challenges that decision, arguing that:  (1) The ALJ erroneously rejected

opinions by Drs. Fine and Hernandez, two consulting examiners; (2) the ALJ incorrectly rejected

Plaintiff's testimony; and, (3) the ALJ failed to consider Plaintiff's psychological impairments at

step two of the five step process.

Defendant contests Plaintiff's assessment, pointing out that:  (1) The ALJ had specific and

legitimate reasons to discount the opinions of Drs. Fine and Hernandez; (2) Plaintiff's testimony

was inconsistent with the medical record and with his daily activities; and, (3) the ALJ found that

the combined effects of Plaintiff's impairments were "severe," thus any failure to consider

psychological impairments was not error.

## III.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or

she is unable to engage in substantial gainful activity due to a medically determinable physical or

mental impairment that has lasted or can be expected to last for a continuous period of not less

than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 26-38.  In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 18, 2012, the date specified in his application.  AR 28.  Further, the ALJ identified scoliosis with low back pain, a history of right hip fracture status post surgeries, and right knee disorder as severe

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

impairments.  AR 28.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 31-32.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to: "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but he needs to be allowed to sit or stand alternatively at will, provided that he is not off-task more than 10% of the work period. He can only occasionally crouch, kneel, crawl, and climb ladders, ropes, and scaffolds. In addition, he can only frequently stoop and climb ramps and stairs." AR 32.  Plaintiff was unable to perform his past relevant work.  AR 36.  However, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including shipping and receiving weigher, router clerk, and checker.  AR 37.

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V.    DISCUSSION

### A.  The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as the statements of Plaintiff, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of:  (1) the opinion of consulting examiner Dr. Frank Fine; (2) the opinion of psychological consulting examiner Dr. Joseph Hernandez; and (3) the testimony of Plaintiff.  The Court has reviewed the entire medical record and will summarize

it in relevant part.

### i.  Treatment at Doctors Medical Center of Modesto

Plaintiff saw a succession of physicians and other medical caretakers between November 2011 and May 2012 at or in connection with his treatment at Doctors Medical Center of Modesto.

On November 3, 2011, Plaintiff sought treatment for shortness of breath and chest pain and saw Jeremiah Fillo, M.D.  AR 472.  Plaintiff was given aspirin, morphine, a nitro patch, and Zofran, which relieved his chest pain.  AR 472.  Plaintiff told Dr. Fillo he took Aleve as necessary for headaches.  AR 472.  Plaintiff reported receiving a DUI within the past year.  AR 473.  He complained of insomnia, but denied any feelings of anxiousness.  AR 473.  A mental status examination described his affect as "slightly disheveled" and "somewhat blunted."  AR 473.  He had a euthymic mood, but appropriate speech and thought processes.  AR 473.  He had no suicidal or homicidal ideations and was fully oriented.  AR 473.  Dr. Fillo entered a diagnosis of "[q]uestionable anxiety disorder."  AR 474.

On December 21, 2011, Plaintiff saw Satnam Ludder, M.D., a cardiologist, for a consultation regarding his chest pains.  Dr. Ludder reviewed Plaintiff's chest x-rays and EKG results and noted that Plaintiff had a history of "some anxiety disorder."  AR 460.  He also noted that Plaintiff "walks about a mile a day without any problems."  AR 460.  He observed that Plaintiff was oriented to time, place, and person.  AR 461.  Plaintiff's mood was good.  AR 461.  Dr. Ludder recommended a metabolic panel, lipid panel, and blood work up, although follow up treatment was to be conducted by his primary care physician.  AR 462.  He also recommended that Plaintiff "continue his exercise protocol walking about a mile a day everyday [sic]."  AR 462.

On April 16, 2012, Shawn Escobar, M.D., reviewed x-rays of Plaintiff's hip and noted that he had "[s]evere degenerative changes of the right hip which . . . may be related to a prior injury in this region."  AR 488.

On October 16, 2012, Plaintiff was seen by Omar Liran, M.D., complaining of suicidal ideation.  AR 556.  Plaintiff was admitted to the hospital under California Welfare and Institutions Code § 5150.  AR 556.  Plaintiff stated that he was "feeling depressed and anxious" because he was required to pay child support but did not have the money to do so.  AR 556.  He

"complained of hip pain and said that he is applying for social security disability and that is why he cannot work." AR 556.  Plaintiff was given Cymbalta and ate and slept normally while admitted.  AR 557.  Plaintiff then said that he felt good and "no longer wants to hurt himself." AR 557.  Dr. Liran observed that he appeared "less anxious" and "currently does not meet criteria for involuntary inpatient hospitalization."  AR 557.  Plaintiff requested that he be discharged and was provided with a bus ticket and resource packet for psychiatric and peer support groups in his area.  AR 557.

### ii.  Roger Wagner, M.D.

Dr. Wagner conducted an internal medicine consultative examination of Plaintiff on August 24, 2012. AR 503.  Plaintiff explained that he had suffered a hip fracture in 2001 while at work and that the injury required two surgeries to repair.  AR 503.  He stated that his right leg is shorter than his left leg and that he could walk "about one to one and a half blocks." AR 503.  He also complained of scoliosis, which caused him pain when bending or lifting.  AR 504.  He claimed that he could only tolerate sitting for approximately 45 minutes.  He stated that he lived with his girlfriend and that he could cook, clean, and perform other daily living activities without assistance. AR 504.  He rode a bicycle for exercise and took ibuprofen for pain.  AR 504.  Dr. Wagner observed that Plaintiff was able to walk at a normal pace while at the office, was "easily able to get on and off the examination table," and was "very, very easily able to bend over at the waist and take off his shoes and socks, demonstrating very good limberness in the back when doing so." AR 504.  Plaintiff had a normal station and gait, but reported discomfort "on internal and external rotation of the right hip."  AR 505.

Dr. Wagner diagnosed Plaintiff with a right hip fracture status post surgery and scoliosis. AR 506-507.  Based on these diagnoses, Dr. Wagner found that Plaintiff could:  stand and/or walk for up to six hours; sit for up to six hours; lift/carry 20 pounds occasionally and 10 pounds frequently; stoop frequently; and crouch and crawl occasionally.  AR 507.

The ALJ gave Dr. Wagner's opinion substantial weight.  AR 35.

### iii.  Deborah von Bolschwing, Ph.D.

Dr. von Bolschwing conducted a psychological consultative examination of Plaintiff on

August 27, 2012.  Plaintiff complained to Dr. von Bolschwing of his physical problems, but did not complain about any psychological symptoms.  AR 510.  Plaintiff told Dr. von Bolschwing that he had been laid off in 2011 because of a lack of available work.  AR 510.  He reported chronic hip pain for which he was taking aspirin.  AR 511.  He also denied any suicidal or homicidal ideation or psychiatric hospitalizations.  AR 511.  He said that he was able to drive and perform simple chores "such as washing dishes, doing laundry, and preparing simple meals."  AR 511.

Dr. von Bolschwing observed that Plaintiff had a "full affect and a pleasant mood."  AR 511.  His mental status examination was largely normal, although his general fund of knowledge was below average.  AR 511.  Dr. von Bolschwing did not diagnose any psychological impairments.  AR 511.  She did state, however, that Plaintiff had mild impairments in: understanding, remembering, and carrying out simple instructions; maintaining attention and concentration for the duration of the evaluation; maintaining pace while completing tasks; enduring the stress of the interview; and interacting with the public, supervisors, and co-workers.  AR 512.  She also found that Plaintiff had moderate impairments in:  understanding, remembering, and carrying out complex instructions; and adapting to changes in routine work-related settings.  AR 512.  Despite these impairments, Dr. von Bolschwing found that the "main obstacle to adequate work performance appears to be his medical condition," which was "beyond the scope of today's evaluation, and is deferred to medical opinion."  AR 512.

The ALJ gave Dr. von Bolschwing's opinion little weight.  AR 31.

### iv.  Frank Fine, M.D.

Dr. Fine conducted a physical consultative examination of Plaintiff on September 9, 2013.  AR 580.  Plaintiff complained of pain in his lower back that radiated down his right leg.  AR 584.  He stated that he was only able to walk a quarter of a block and that he experienced "agonizing back pain" when trying to bend, stoop, or lift.  AR 584.  He explained that his hip injury was sustained in 2000 while he was working for a railroad company and that he had needed surgery and physical therapy as a result of the injury.  AR 584.  He told Dr. Fine that he returned to work after his injury, but developed carpal tunnel syndrome after a month on the job.  AR 585.

Eventually, he decided that he could not perform his job duties any longer.  AR 585.  He rated his current back and knee pain as 8/10 and his hip pain as 9/10.  AR 585.

Dr. Fine conducted a physical examination and found that Plaintiff had limited range of motion in his right hip and lumbar trunk.  AR 586.  Plaintiff also had difficulty walking.  AR 587.  Plaintiff's right knee had a full range of motion, but had swelling around the joint and some pain.  AR 587.

Dr. Fine concluded that Plaintiff was "quite disabled" and that he would not be able to "return to the open job market and compete in the workforce due to his multiple disabilities."  AR 587.  In particular, he found that:

> It is my opinion this patient has permanent restrictions. He cannot repetitively bend or stoop, he cannot lift more than 10 lbs.  He cannot walk more than a quarter of a block and needs to sit down for a 5-10 interval rest. He should not be on his feet for more than 20 minutes at a time. He cannot walk over uneven ground, he cannot perform pivoting maneuvers with his right hip. He cannot repetitively kneel or squat about his right lower extremity. He also has some impairment with his ability to repetitively grip and grasp with both hands related to his carpal tunnel syndrome and history of carpal tunnel release surgery in his hands. The patient needs to be under the care of a psychiatrist and continues to require psychotropic medications. He should also be allowed the benefit of being seen by a psychologist for his issues of depression and anxiety. His previous Social Security psychological evaluator, Dr. Von Volschwing [sic] noted the patient has moderate impairment with ability to understand, remember, and carry out complex instructions and moderate impairment of ability to adapt to changes in routine work-related settings. It is my opinion with regard to his psychiatric disability and physical impairments I doubt [sic] that he could return to the open job market. I told the patient I would be happy to take over as his primary treating physician and provide pain management for him and see if this might improve his level of function.

AR 587-588.

The ALJ gave Dr. Fine's opinion little weight.  AR 31.

### v. Joseph Hernandez, Ph.D.

Dr. Hernandez conducted a psychological consultative examination of Plaintiff September 30, 2013.  AR 589.  Plaintiff told Dr. Hernandez that after 2003 or 2004, he has only been able to work in various odd jobs because of his impairments.  AR 597.  He rated his pain level for his back and leg 6/10 and his wrist as 0 or 1/10.  AR 597.  He reported that he takes aspirin and ibuprofen to manage his pain.  AR 597.

Dr. Hernandez conducted a mental status examination and observed that Plaintiff's fund

of knowledge appeared low, although he had "no loss of contact with reality." AR 598. He reported that Plaintiff was "an affable individual, who was cooperative during interview and testing." AR 598. He noted that although Plaintiff had a "brief period of suicidal ideation in October 2012," his thoughts during that period "have resolved." AR 598. Nonetheless, he believed that Plaintiff "presented in a manner consistent with moderate to severe depression." AR 598.

Dr. Hernandez concluded that Plaintiff's "physical condition has precluded Mr. Randy Davisson from working in his former occupation since 2010, when he last worked." AR 599. He explained that Plaintiff's "affective symptoms appear to be predominantly the result of his chronic pain condition and resultant financial stress." AR 599. He also noted, however, that Plaintiff "has, undoubtedly, felt significant emotional distress since October 16, 2012, which is when he experienced severe suicidal ideation and was hospitalized as being a danger to self or others." AR 599. He observed that Plaintiff's psychological "symptoms are being controlled through the use of Wellbutrin." AR 599. Nonetheless, he determined that Plaintiff "appears unable to work in his Past Relevant Work from a physiological perspective due to the level of pain that he experiences." AR 600.

The ALJ gave Dr. Hernandez's opinion little weight. AR 31

### vi. Alan Coleman, M.D. and Maria Legarda, M.D.

Dr. Coleman reviewed Plaintiff's medical records on September 15, 2012. AR 117. He concluded that Plaintiff was capable of work at a medium exertion level and with minimal exertional limitations. AR 114, 116. Dr. Legarda reviewed Plaintiff's medical records on February 11, 2013 and concurred with respect to the exertional limitations. AR 130, 141. The ALJ gave Drs. Coleman and Legarda reduced weight, saying that they "overstate the claimant's physical capacity." AR 35.

### vii. Helen Patterson, Ph.D.

Dr. Patterson reviewed Plaintiff's medical records on February 11, 2013. AR 141. Dr. Patterson noted that there was no evidence of psychological problems until Plaintiff's October 16, 2012 hospital admission. AR 141. She concluded that "any work-related functional limitations

1    caused by symptoms of depression would resolve to a non-severe level within 12 months."  AR

2    141.  Accordingly, she found that Plaintiff had only mild limitations in activities of daily living;

3    maintaining social functioning; and maintaining concentration, persistence, or pace.  AR 142.

4        The ALJ gave Dr. Patterson's opinion substantial weight.  AR 30.

5    **B.  The ALJ Appropriately Considered Plaintiff's Impairments at Step Two of the Five Step Analysis[6]**

6        ***i.  Legal standard***

7        In step two of the five step analysis, the ALJ is required to determine whether a plaintiff

8    has a "severe" medical impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c),

9    416.920(c).  "An impairment or combination of impairments is not severe if it does not

10   significantly limit [an individual's] physical or mental ability to do basic work activities."[7]  20

11   C.F.R. §§ 404.1521(a), 416.921(a).  Social Security Ruling ("SSR") 85-28 further clarifies that an

12   impairment or combination of impairments is "not severe" when "medical evidence establishes

13   only a slight abnormality or a combination of slight abnormalities *which would have no more*

14   *than a minimal effect on an individual's ability to work* even if the individual's age, education, or

15   work experience were specifically considered."  SSR 85-28, 1985 WL 568556 (1985) (emphasis

16   added); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

17       When the severity of a mental impairment is at issue, the regulations require a state

18   agency reviewing physician to rate the claimant's functional limitations in four broad areas

19   (activities of daily living; social functioning; concentration, persistence or pace; and episodes of

20   decompensation).  The ALJ's written decision must then address the reviewing physician's

---

[6] Although Plaintiff is purportedly challenging the ALJ's determination at Step Two that Plaintiff's psychological impairments were not "severe," the substance of his argument appears directed at the ALJ's rejection of Dr. Hernandez's opinion.  (Plaintiff's Opening Brief 10:6-7 ("Plaintiff takes issue with the ALJ's reliance on a non-examining physician opinion, over that of the examining physician, Dr. Hernandez, or even Dr. van [sic] Bolschwing."), ECF No. 16.)  Because Plaintiff raises a separate challenge to the ALJ's rejection of Dr. Hernandez, however, the Court will treat the current argument as an objection to the ALJ's step two analysis and will address Plaintiff's arguments with respect to Dr. Hernandez below.

[7] Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," including physical functions (such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 140.1521(b), 416.921(b).

1  findings in relation to his or her determination at step two of the analysis.  SSR 96-8p, 1996 WL

2  374184 (1996); 20 C.F.R. §§ 404.1520a(c)(3) and (e), 416.920a(c)(3) and (e); *Keyser v.*

3  *Commissioner of Social Security*, 648 F. 3d 721, 725 (9th Cir. 2011).  If the degree of functional

4  limitations in the first three functional areas is rated as "none" or "mild" and is rated as "none" in

5  the fourth area, the impairment is generally considered not severe, unless the evidence otherwise

6  indicates that there is more than a minimal limitation in the ability to do basic work activities. 20

7  C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  A failure to designate an impairment "severe" at step

8  two does not constitute error if the "medical record does not establish any work-related

9  limitations as a result of [that] impairment."  *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir.

10  2008) (failure to designate carpal tunnel syndrome "severe" not error where few medical records

11  mentioned condition).

12                    *ii.  Analysis*

13        Plaintiff contends that the ALJ erred by failing to find that his psychological impairments

14  were "severe" at step two.  (Plaintiff's Opening Brief 10:12-13, ECF No. 16.)  In support of this

15  conclusion, Plaintiff lists several instances that he believe support the argument that he was

16  suffering from severe psychological impairments.  In particular, Plaintiff argues that the ALJ did

17  not discuss a visit to the hospital on October 16, 2012, during which Plaintiff expressed suicidal

18  ideation.

19        Defendant responds that the ALJ's step two analysis need not catalogue all impairments,

20  nor need he make an independent ruling as to the severity of each individual impairment.  Rather,

21  the ALJ need only determine whether the cumulative effects of Plaintiff's impairments are

22  "severe" enough to allow the analysis to continue.

23        The mere existence of an impairment is not, by itself, disabling.  *Sample v. Schweiker*, 694

24  F.2d 639, 642 (9th Cir. 1982).  The fact that Plaintiff was diagnosed with a psychological

25  impairment does not necessarily establish the need for functional limitations arising out of that

26  impairment.  Thus, even if Plaintiff was diagnosed with a "[h]istory of some anxiety disorder," it

27  is within the ALJ's discretion to determine whether the medical record supports functional

28  limitations as a result of that diagnosis.  AR 460.  Nor does a simple diagnosis demand a finding

of a "severe" impairment—the ALJ reviews the Plaintiff's functional limitations in the four above-mentioned areas precisely because mental impairments require a "complex and highly individualized process" to assess severity.  20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

Here, the ALJ thoroughly examined the possibility that any limitations could arise from Plaintiff's alleged psychological impairments.  He reviewed the medical evidence and noted, for example, that Plaintiff had no more than mild limitations with respect to his activities of daily living; social functioning; and concentration, persistence, and pace.  AR 29-30.  Each of his findings in these areas is consistent with substantial evidence in the record.  Contrary to Plaintiff's assertion, the ALJ reviewed and considered Plaintiff's October 16, 2012 episode of suicidal ideation.  AR 29 ("Although he was placed on an involuntary psychiatric hold for 2 days in October 2012 due to suicidal ideation, his mental status stabilized at discharge and his prognosis was reported to be fair. Moreover, the claimant has received relatively little specialized mental health treatment throughout the adjudicated period, which indicates that his mental functioning is generally intact.").  He did not find (nor does Plaintiff point to) evidence suggesting that any of Plaintiff's psychological impairments require specific functional limitations beyond those explained in the decision.  A statement that Plaintiff is experiencing stress or that Plaintiff has some history of "anxiety disorder," without more, does not demonstrate a significant limitation on the ability to perform basic work activities.  *Carmickle*, 533 F.3d at 1165.  Given these findings, the ALJ did not err in finding Plaintiff's psychological limitations "non-severe."

### C.  The ALJ's Treatment of Physician Opinions

#### i.  *Legal standards*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals.  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject the *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830.  While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), but the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion.  *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

### ii.   *Joseph Hernandez, Ph.D.*

Plaintiff contends that the ALJ rejected Dr. Hernandez's opinion and declined to

incorporate his recommendations in Plaintiff's RFC.  Plaintiff does not, however, identify

particular issues he is challenging in the ALJ's treatment of Dr. Hernandez.  Rather, he recites Dr.

Hernandez's findings, states that they contradict the ALJ's findings with respect to Plaintiff's

medical impairments, and asserts that Dr. Hernandez's opinion should have been used in creating

an RFC.  (Plaintiff's Opening Brief 10:2-5, 16:17-17:4, ECF No. 16.)  Despite the lack of a

specific challenge to the ALJ's reasoning, the Court will review the ALJ's treatment of Dr.

Hernandez's opinion for legal error.

Dr. Hernandez's opinion that Plaintiff is unable to work because of his psychological

impairments is contradicted by Dr. von Bolschwing's findings.  *Compare* AR 599 ("From a

psychological perspective, I believe that it would be very difficult for Mr. Randy Davisson to

work without some interruption to his usual schedule.") *with* AR 511 ("Only medical problems

were reported. No current affective symptoms were reported, and none were observed.").  The

ALJ would thus need specific and legitimate reasons supported by substantial evidence to reject

Dr. Hernandez's findings.  *Lester*, 81 F.3d at 830.

In the decision, the ALJ explained his rationale for assigning Dr. Hernandez (and Dr.

Fine) little weight:

> Frank Fine, M.D., who examined the claimant on September 9, 2013, stated that
> the claimant was incapable of even "low stress" jobs. Joseph Hernandez, Ph.D.,
> who examined the claimant on September 30, 2013, assessed that the claimant
> could not maintain a regular work schedule or perform work activities
> consistently in a competitive work environment. These opinions are given little
> weight because they understate the claimant's mental capacity and are
> inconsistent with the general absence of evidence of specialized mental health
> treatment in the record. In addition, the assessments are inconsistent with the
> claimant's relatively normal mental status examination conducted on August 27,
> 2012. Moreover, the assessments are inconsistent with the claimant's relatively
> normal daily living activities and generally adequate social activities as discussed
> above.

AR 31 (internal citations omitted).

This explanation suggests that the ALJ rejected Dr. Hernandez's opinion because:  (1) it

was inconsistent with the absence of mental health treatment in the record; (2) it was inconsistent

with Dr. von Bolschwing's mental status examination; and (3) it was inconsistent with Plaintiff's

daily activities.

"The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  As a result, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion "alone constitutes substantial evidence" to reject treating physician's opinion where it "rests on his own independent examination").  It was thus within the ALJ's discretion to give more credence to Dr. von Bolschwing's results from her mental status examination than Dr. Hernandez's results from his mental status examination if the ALJ determined that Dr. von Bolschwing's results were more consistent with the evidence in the record.

Such a finding is supported by substantial evidence.  Very few of the treating physician records suggest significant limitations as a result of any psychological impairments.  Even Plaintiff's hospitalization on October 16, 2012 as a result of his suicidal ideation appears to have resolved within a short period of time.  AR 519 ("On the unit, the patient was eating and sleeping normally and today, the patient says he feels good and he no longer wants to hurt himself. He appears less anxious and says that he slept well at night. The patient is requesting to be discharged and currently does not meet criteria for involuntary inpatient hospitalization.").  Even Dr. Hernandez's own report appears to indicate that Plaintiff's psychological symptoms are largely under control.  AR 599 ("At the present time, Mr. Davisson experiences moderate levels of both depression and anxiety. However, I believe that these symptoms are being controlled through the use of Wellbutrin.").  Confronted with this record, a factfinder could easily conclude that Dr. Hernandez's ultimate conclusions have overstated Plaintiff's impairments.

The ALJ also notes that Plaintiff's daily activities are inconsistent with Dr. Hernandez's stated limitations.  AR 31.  A claimant's daily activities can constitute a reason to discredit a physician's opinion of the claimant's limitations.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (conflict between medical opinion and daily activities "may justify rejecting a treating provider's opinion").  As the ALJ noted, Plaintiff is independent with respect to his self-care

15

activities and performs household chores such as "cooking, sweeping, mopping, cleaning, doing laundry, and washing dishes." AR 32, 64-65. Such activities could plausibly be read as inconsistent with Dr. Hernandez's assessment of Plaintiff's psychological impairments. The ALJ did not commit error in giving little weight to Dr. Hernandez's opinion.

### iii. Frank Fine, M.D.

Plaintiff contends that the ALJ erred in giving little weight to Dr. Fine's opinion. In particular, Plaintiff targets the ALJ's statement that: "Dr. Fine's opinion is 'inconsistent with the routine and conservative nature of the treatment for the Plaintiff's impairment, which shows that the symptoms are not debilitating. In addition, the opinion is inconsistent with the general absence of positive clinical signs concerning the Plaintiff's back and right knee in the objective medical evidence.'"[8] (Plaintiff's Opening Brief 18:1-4, ECF No. 16, *quoting* AR 35.) Plaintiff also compares, at length, Dr. Fine's opinion with the opinion of Dr. Wagner, to whom the ALJ assigned substantial weight.

As an initial matter, it is not the Court's role to compare and contrast each piece of medical evidence and reach conclusions as to how much weight should be assigned to each medical opinion *de novo*; such decisions are the ALJ's responsibility. *Magallanes*, 881 F.2d at 750; *see also Morgan v. Commr. of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions falls with the ALJ's responsibilities). Rather, the Court must examine the ALJ's reasoning and assess its sufficiency. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("If the ALJ's finding is supported by

---

[8] Plaintiff also argues that Dr. Fine's opinion falls within the purview of 20 C.F.R. §§ 404.1527(d) and 416.927(d), which Plaintiff believes establish that Dr. Fine's opinion constitutes substantial evidence. (Plaintiff's Opening Brief 18:5-8, ECF No. 16 ("Plaintiff asserts that Dr. Fine's reports [sic] meets the substantial weight evidence standard required by 20 CFR 404.1527(d), as the doctor, in his reports, indicated appropriate supporting rationale for his limitations.").) Sections 404.1527(d) and 416.927(d) establish no such standard, however. Rather, they lay out specific opinions that an ALJ need not treat as medical evidence—opinions, for example, such as Dr. Fine's statements that the Plaintiff "is quite disabled" and could not "return to the open job market and compete in the workforce due to his multiple disabilities." AR 587; *see* 20 C.F.R. §§ 404.1527(d), 416.927(d) ("Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."). Despite the fact that at least some of Dr. Fine's opinions may not qualify as medical evidence under these regulations, the Court will conduct an analysis of the ALJ's reasons for giving Dr. Fine's conclusions little weight.

substantial evidence, the court 'may not engage in second-guessing.'"").  Thus, the Court declines

Plaintiff's invitation to consider whether Dr. Wagner's examination was more or less thorough

than Dr. Fine's.  The Court will consider, however, whether the ALJ committed any error in

assigning little weight to Dr. Fine's opinion.  As Plaintiff notes, Dr. Fine's opinion is inconsistent

with Dr. Wagner's findings.  Thus, the ALJ was required to provide specific and legitimate

reasons to give Dr. Fine little weight.

The ALJ considered Dr. Fine's opinion at length:[9]

> Dr. Fine, who examined the claimant on September 9, 2013, found that the
> claimant was limited to less than sedentary exertion and was expected to be
> absent from work more than 4 days per month. This opinion is given little weight
> because it understates the claimant's physical capacity and is inconsistent with the
> routine and conservative nature of the treatment for the claimant's physical
> impairments, which shows that the symptoms are not debilitating. In addition, the
> opinion is inconsistent with the general absence of positive clinical signs
> concerning the claimant's back and right knee in the objective medical evidence.
> Moreover, the opinion is inconsistent with the essentially normal physical
> functioning that the claimant exhibited during the Internal Medicine Consultative
> Examination conducted on August 24, 2012. Furthermore, the opinion is
> inconsistent with the claimant's admitted ability to be independent in self-care,
> carry out many household chores, ride a stationary exercise bicycle for 30 minutes
> every other day, and drive a car. Finally, Dr. Fine's offer to assume the duties as
> the claimant's Primary Care Physician (PCP), suggest the potential for something
> less than total lack of bias in the assessment since it involves a single visit by
> claimant.

AR 35 (internal citations omitted).

The ALJ offers at least five reasons here for rejecting Dr. Fine's opinion:  (1) it is

inconsistent with the routine and conservative treatments Plaintiff has received; (2) it is

inconsistent with the general absence of supportive medical evidence; (3) it is inconsistent with

the examination results from Dr. Wagner's examination; (4) it is inconsistent with the Plaintiff's

daily activities; and (5) Dr. Fine offers to continue as Plaintiff's primary care physician,

indicating his bias.  Plaintiff discusses Dr. Wagner's examination (3) and, charitably read,

contends that there is evidence in the record supporting Dr. Fine's conclusions (2).  Plaintiff does

not challenge, however, the ALJ's determination that Dr. Fine's opinion is inconsistent with the

conservative nature of Plaintiff's care (1); that Dr. Fine's opinion is inconsistent with Plaintiff's

daily activities (4); or that Dr. Fine agreed to continue as Plaintiff's primary care physician (5).

---

[9] The ALJ also considered Dr. Fine's conclusions when discussing Dr. Hernandez, as indicated above.

Even assuming, therefore, that Plaintiff is correct that the ALJ erred with respect to (2) and (3), the Court must find in favor of the Commissioner if (1), (4), or (5) are legitimate and supported by substantial evidence.

As noted above, a Plaintiff's daily activities can constitute a specific and legitimate reason to reject a medical opinion where the daily activities are inconsistent with that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Substantial evidence in the record supports the conclusion that Plaintiff engaged in daily activities that were inconsistent with many of Dr. Fine's statements and conclusions.  For example, Dr. Fine concluded that Plaintiff could walk no more "than a quarter of a block and needs to sit down for a 5-10 minute interval rest."  AR 587.  Multiple other records indicated, however, that Plaintiff was capable of engaging in relatively vigorous physical activity for an extended period of time. *See, e.g.*, AR 59 ("Q. What do you do for exercise? A. Ride a bike. Q. How often do you do that? A. Every other day . . . Q. Okay. How long do you ride? A. For about 30 minutes."); 462 (Plaintiff "will continue his exercise protocol walking about a mile a day everyday."); 504 (Plaintiff "does some biking for exercise").  Plaintiff also engages in a wide range of other activities that are inconsistent with a disability finding.  He testified that he sweeps, mops, does the dishes, does the laundry, shops for himself, and is able to drive (although he does not drive because he does not have a vehicle).  AR 64.  He also enjoys fishing.  AR 560.

The ALJ's finding that Plaintiff's daily activities are inconsistent with Dr. Fine's conclusions is specific, legitimate, and supported by substantial evidence.  There is thus no error in the ALJ's decision to give Dr. Fine's opinion little weight.

**D.  The ALJ's Evaluation of Plaintiff's Credibility**

### i.  *Legal standards*

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*.  The claimant is not required to show that the

impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id.*

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted).

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

### ii.   *Analysis*

The ALJ's decision questions Plaintiff's credibility with respect to the severity of his symptoms.  AR 34 ("the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."). The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible.  *Vasquez*, 572 F.3d at 591.

The ALJ offers a lengthy discussion of his consideration of Plaintiff's testimony. He

offers, among others, four reasons for finding Plaintiff not credible: (1) Plaintiff's allegations of his physical limitations are not supported by the evidence in the record (AR 34 ("As discussed above, the claimant's allegations of debilitating physical symptoms are not well supported by the Medical Evidence of Record"); (2) Plaintiff's testimony at the hearing is inconsistent with his daily activities (AR 34 ("The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."); (3) Plaintiff's testimony is inconsistent with the statements in his function report (AR 34 ("The record reflects that the claimant has made inconsistent statements regarding matters relevant to the issue of disability."); and, (4) the ALJ did not observe any evidence of debilitating symptoms at the hearing (AR 34 ("The claimant showed no persuasive evidence of debilitating pain or discomfort while testifying at the hearing.").  The ALJ also makes a brief note about Plaintiff's prior employment and the reason that employment was terminated.  The Court will consider each of these reasons in turn.[10]

The fact that a Plaintiff's statements are not supported by the objective evidence in the record may constitute a reason to find those statements unpersuasive, although it cannot represent the **only** reason.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on the lack of objective medical evidence to fully corroborate the alleged severity of pain").  When this rationale is relied on, the ALJ "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds."  *Id.*  This means that the ALJ must "identify specifically which of [Plaintiff's] statements she found not credible and why."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (ALJ's statement that "the functional limitations from

---

[10] As with many of the issues raised in this appeal, Plaintiff challenges some, but not all, of the ALJ's reasons for discrediting Plaintiff's testimony.  With respect to credibility, for instance, Plaintiff challenges that ALJ's use of Plaintiff's daily activities and inconsistent statements, but does not challenge the ALJ's personal observations of Plaintiff or the lack of medical evidence to support the *severity* of Plaintiff's symptoms. Plaintiff does provide evidence that Plaintiff has impairments and that those impairments may cause *some* level of the alleged symptoms, but that is not at issue—the ALJ made findings that agree with these contentions.  AR 33 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").  While the Court would be within its discretion to find that any error committed by the ALJ was thus harmless error (because at least some of the ALJ's findings are valid, absent any challenge from Plaintiff), the Court will review the most prominent reasons for rejecting Plaintiff's credibility.

1   the claimant's impairments were less serious than she has alleged" insufficiently specific to

2   justify rejection of testimony).

3       In his decision, the ALJ recounts each of the alleged conditions/impairments and describes

4   whether they are supported by the objective medical evidence.  AR 34.  He identifies the specific

5   conditions that Plaintiff complains of and explains what evidence is lacking in the record to

6   support those conditions.  *See, e.g.*, AR 34 ("Few positive clinical signs concerning his back and

7   right knee were found at physical examinations held throughout the adjudicated period. In

8   addition, the record contains no relevant positive findings from a diagnostic image of his right

9   knee.").  The ALJ's reasoning here is sufficiently specific to cast doubt on the credibility of

10  Plaintiff's statements about the pain in his back and right knee. Because the absence of supportive

11  objective evidence cannot form the sole rationale to reject a plaintiff's testimony, however, this

12  reason alone is not dispositive.

13      The ALJ determined that Plaintiff's daily activities were inconsistent with the extent of his

14  alleged impairments.  A plaintiff's daily activities or inconsistencies in testimony can constitute a

15  reason to find that he lacks credibility.  *Tommasetti*, 533 F.3d at 1039.  In particular, the ALJ

16  noted that that Plaintiff was able to cook, sweep, mop, do laundry, wash dishes, ride a stationary

17  exercise bicycle every other day, and drive (although he does not drive because he does not have

18  a vehicle).  AR 34.  Substantial evidence supports the fact that Plaintiff is able to engage in these

19  activities, despite his allegations of debilitating symptoms.  Plaintiff testified that he was able to

20  perform all these tasks at the hearing and in interviews with medical examiners.  AR 64, 69, 504,

21  511.

22      Plaintiff contends that these activities do not show that he is able to perform functions in a

23  workplace setting because they do not demonstrate skills that are transferable into the workplace.

24  (Plaintiff's Opening Brief 14:11-18, *citing Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), ECF

25  No. 16.)  But, unlike in *Orn*, the ALJ's analysis does not rest on transferability into a specific

26  occupation.[11]  Rather, the ALJ found that the specific limitations Plaintiff claimed were

27

28  [11] In *Orn*, the ALJ found that the plaintiff could be a "surveillance systems monitor" by virtue of the fact that he
    could read, watch television, and color in coloring books as daily activities.  *Orn*, 495 F.3d at 639.

incongruent with his specific daily activities.  For instance, the allegation that Plaintiff is unable to sit for more than 10 minutes at a time (AR 76) is inconsistent with the statement that he uses an exercise bicycle for 30 minutes every other day (AR 59).  The allegation that he is unable to prepare his own meals (AR 296) is inconsistent with the statement that he can cook and likes to barbecue stuffed tri-tip (AR 68-69).  And the allegation that he can only walk for 10-15 feet before resting for an hour or two (AR 299) is inconsistent with the statement that he is walking "about a mile everyday."  AR 462.  None of these contradictions are offered to prove that Plaintiff is able to perform specific work activities; instead, they are offered to establish that Plaintiff has been inconsistent in explaining his limitations and that his statements about the severity of his symptoms should be weighted accordingly.  Such a finding is within the ALJ's discretion.

Plaintiff also contends that Plaintiff's activities and symptoms have varied over time.  (Plaintiff's Opening Brief 15:1-5, ECF No. 16.)  The implied argument is thus that a factfinder would expect some contradictions in Plaintiff's statements and symptoms.  But no evidence in the record supports this contention—the mere fact that Plaintiff's stated activities are inconsistent with his stated limitations does not, without more, establish clear fluctuations over time in his condition.  The Court sees little reason, based on the record, to assume that Plaintiff's condition(s) are susceptible to erratic and unexplained changes in their severity over time.

The ALJ also observed at the hearing that the Plaintiff did not demonstrate any signs of pain or discomfort while testifying at the hearing.  An ALJ's personal observations of a Plaintiff's demeanor may form a part of the credibility analysis. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Such observations, however, cannot "form the sole basis for discrediting a person's testimony." *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007).  The ALJ acknowledged this limitation in his findings here—noting that his observations "cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis."  AR 34.  The ALJ thus gave this consideration only "slight weight" in negating Plaintiff's credibility.  AR 34.  Plaintiff does not challenge this finding.  To the limited extent the ALJ considered this factor, he was not in error.

Finally, the ALJ noted that Plaintiff's condition appears to have originated from an injury

22

that occurred in 2000 and that Plaintiff worked for nearly eight years following that injury.  AR 34.  When Plaintiff stopped working, it was only because of a business-related layoff, rather than any disability.  AR 34.  The ALJ suggests that these two facts demonstrate that Plaintiff's impairment was not entirely debilitating.  A plaintiff's prior work history or reasons for job loss are legitimate considerations in evaluating credibility.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms . . . We will consider all of the evidence presented, including information about your prior work record"); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (fact that plaintiff lost two jobs for reasons other than pain appropriate consideration in credibility analysis).  Plaintiff does not challenge these contentions.  Both appear to be substantiated by the record.  AR 52, 248, 510 ("He was laid off due to lack of available work"), 584.  The Court thus finds that the ALJ did not commit error in considering these facts.

**VI.    CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record and based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security and against Plaintiff Randy Davisson.

IT IS SO ORDERED.

Dated:   **July 22, 2016**                      /s/ *Erica P. Grosjean*
                                              UNITED STATES MAGISTRATE JUDGE